[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15325
Non-Argument Calendar

_____

D.C. Docket No. 4:15-cv-00956-JEO

GADSDEN INDUSTRIAL PARK LLC,

Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA,
CMC INC.,
HARSCO CORPORATION,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(November 30, 2018)

Before WILSON, JORDAN, and EDMONSON, Circuit Judges.

PER CURIAM:

Gadsden Industrial Park, LLC ("GIP") appeals the district court's dismissal of its civil action against the United States and against two government contractors: CMC, Inc. ("CMC") and Harsco Corporation ("Harsco"). GIP sought to assert claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., and under Alabama tort law. No reversible error has been shown; we affirm.

Briefly stated, this appeal arises from an environmental clean-up project performed at the site of a former steel manufacturing facility in Gadsden, Alabama (the "Site"). The 761-acre Site had been owned and operated by Gulf States Steel, Inc. of Alabama. In 2002 -- in connection with Gulf States's bankruptcy proceedings -- GIP purchased 434 acres of the Site real property. GIP also purchased assets located on the unpurchased portion of the Site (the "Excluded Real Property"), including all "kish" and "420,000 cubic yards of slag"[1] and, ultimately, a railroad track system.

In 2007 or 2008, the United States Environmental Protection Agency ("EPA") began remedial work on the Excluded Real Property as part of a "Superfund" site project under the Comprehensive Environmental Response,

---

[1] "Kish" is a by-product of the steelmaking process which contains recyclable metal particulates. "Slag" is the unrefined result of the first step of the steelmaking process.

Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9657. During the remedial work, GIP was barred from entering the Excluded Real Property and, thus, was unable to retrieve the kish and slag or to utilize the railroad lines located thereon.

The EPA hired CMC to be its "emergency response contractor and/or site manager at the Site." On behalf of the EPA, CMC then hired Harsco to determine whether the Excluded Real Property could be mined for metal-bearing materials and, later, to conduct the removal operation. Between 2010 and 2013 -- pursuant to an agreement with the EPA and CMC -- Harsco mined portions of the Excluded Real Property and sold to third parties metal-bearing materials from kish and slag: allegedly the kish and slag owned by GIP. A portion of the gross proceeds from those sales was remitted to CMC as payment toward the amount the EPA owed CMC for work on the Site. During the course of the mining work in 2012, Harsco also removed approximately 1,400 feet of the railroad track owned by GIP and rendered another 1,000 feet of the track unusable by covering it completely with "non-saleable mined material."

This civil action is the fifth lawsuit to have been filed as a result of the EPA's clean-up efforts at the Site. GIP filed two separate civil actions (in 2010 and in 2013) against the United States in which GIP alleged that the United States -- in violation of the Fifth Amendment -- had taken GIP's property without just

3

compensation. The 2010 case alleged an unlawful taking of the kish while the 2013 case alleged an unlawful taking of the railroad track.

In January 2014, GIP filed a third civil action against the United States, CMC, and Harsco in which GIP alleged claims for conversion and negligence based on the alleged wrongful removal and burial of the railroad tracks purportedly owned by GIP on the Excluded Real Property (the "2014 Tort Case"). In the 2014 Tort Case, GIP asserted no claims based on Defendants' removal or sale of the kish and slag. At the conclusion of GIP's case-in-chief at trial, the trial court granted CMC and Harsco's motion for judgment as a matter of law. Final judgment was entered on 5 August 2016.

The fourth civil action arising from the EPA's clean-up efforts was filed by the United States against GIP in May 2014. There, the United States sought to recoup costs incurred by the EPA in the Site clean-up, pursuant to CERCLA (the "CERCLA Case"). The CERCLA Case was dismissed in April 2015: the district court concluded that because the slag piles were no "facility" within the meaning of CERCLA, GIP was no "potentially responsible party" liable for the costs of remediation.

Now, the civil action underlying this appeal was filed by GIP in June 2015. In pertinent part, GIP alleges that Defendants are liable for conversion of GIP's

4

kish and slag (Count I); and that Defendants acted negligently by "removing, destroying, discarding and/or selling" the kish and slag (Count II).[2]

In a 57-page detailed order, the district court dismissed GIP's claims against CMC and Harsco as barred by res judicata based on the 2014 Tort Case. The district court also dismissed GIP's claims against the United States as barred by sovereign immunity, after the court determined that the complained-of conduct fell within the scope of the discretionary function exception to the FTCA.

I.

We review de novo a district court's decision that a claim is barred by res judicata. Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999).

"Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding." Id. A claim is barred by earlier litigation if these four elements are met: (1) a prior final judgment on the merits exists, (2) the prior decision was rendered by a court of competent jurisdiction, (3) the parties are identical in both suits, and (4) the same cause of action is involved in both cases. Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1187 (11th Cir. 2003). Here, that

---

[2] GIP also alleged that the United States is liable for both conversion and negligence based on the removal and burial of sections of railroad track owned by GIP (Counts III and IV). On appeal, however, GIP has abandoned expressly these claims.

5

the first three elements are met is undisputed. GIP argues only that this civil action involves a different cause of action than did the 2014 Tort Case.

"[C]ases involve the same cause of action for purposes of res judicata if the present case arises out of the same nucleus of operative fact, or is based on the same factual predicate, as a former action." Israel Disc. Bank Ltd. v. Entin, 951 F.2d 311, 315 (11th Cir. 1992) (quotation omitted). "In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form." Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1503 (11th Cir. 1990). "In other words, a court must look to the factual issues to be resolved in the second cause of action, and compare them with the issues explored in the first cause of action." Id. (quotations and alterations omitted).

GIP contends that this case is separate and distinct from the 2014 Tort Case -- and, thus, is not barred by res judicata -- because the 2014 Tort Case involved claims relating only to the removal and burial of the railroad tracks, whereas this case involves claims relating only to Defendants' removal of the kish and slag. We disagree.

In both this civil action and in the 2014 Tort Case, GIP asserted against the same three defendants claims for negligence and for conversion. Both cases require resolution of factual issues surrounding GIP's ownership of assets located on the Excluded Real Property and on Defendants' treatment of those assets during

6

the course of their environmental remediation work performed between 2010 and 2013. The removal and burial of the railroad tracks complained of in the 2014 Tort Case occurred in conjunction with Defendants' mining of the kish and slag now at issue in this case. In its operative complaint here, GIP alleged expressly that one portion of railroad track was removed "[d]uring the course of [Defendants'] work in mining for 'kish,'" and that another portion of track was rendered unusable by Defendants when it was "completely covered with non-saleable mined material."

That GIP asserted no express claim for recovery in the 2014 Tort Case based on Defendants' alleged negligence and conversion of the kish and slag is not determinative: "[r]es judicata acts as a bar not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact." Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1356 (11th Cir. 1998). What matters, instead, is that GIP could have brought its claims related to the kish and slag when it filed the 2014 Tort Action.

Because both this case and the 2014 Tort Case assert claims under the same tort law theories, against the same defendants, and based on the same factual predicate, the two suits involve the same cause of action. The district court thus committed no error in dismissing GIP's claims against CMC and Harsco as barred by res judicata.

7

II.

We review de novo whether the government is entitled to application of the discretionary function exception to the FTCA. Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir. 1998).

The FTCA waives the government's sovereign immunity from tort suits for the negligent or wrongful acts or omissions of government employees acting within the scope of their employment. See 28 U.S.C. § 1346(b)(1); Suarez v. United States, 22 F.3d 1064, 1065 (11th Cir. 1994). The discretionary function exception to the FTCA, however, precludes government liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "When the discretionary function exception to the FTCA applies, no federal subject matter jurisdiction exists." United States Aviation Underwriters, Inc. v. United States, 562 F.3d 1297, 1299 (11th Cir. 2009).

In determining whether the discretionary function exception applies in a particular case, we consider (1) whether the conduct at issue involves "an element of judgment or choice," and, if so, (2) "whether that judgment is grounded in considerations of public policy." Cohen, 151 F.3d at 1341. About the first

element, "unless a 'federal statute, regulation, or policy specifically prescribes a course of action embodying a fixed or readily ascertainable standard,' it will be presumed that the particular act involved an element of judgment or choice." Zelaya v. United States, 781 F.3d 1315, 1330 (11th Cir. 2015).

As an initial matter, we reject GIP's argument that the United States is collaterally estopped from invoking the discretionary function exception based on the final judgment in the CERCLA Case. The court's ruling in the CERCLA Case -- which decided only whether GIP was liable under CERCLA for the costs of remediation -- in no way addressed whether the EPA exceeded its statutory authority under CERCLA or whether the EPA could be held liable under Alabama tort law based on conduct undertaken during the course of its remediation work at the Site.

The district court committed no error in concluding that the discretionary function exception applied to GIP's FTCA claims against the United States. The EPA has broad discretionary authority under CERCLA to determine the appropriate procedures and means by which to address the release or threatened release of hazardous substances into the environment. See 42 U.S.C. § 9604(a)(1) (providing that the EPA "is authorized to . . . remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance . . . at any time . . . or take any other response measure . . . which the [EPA] deems necessary

9

to protect the public health or welfare or the environment."). Congress has provided no specific mandatory guidance on how the EPA should conduct remedial acts and, instead, has set forth only "[g]eneral rules" to guide the agency's selection of appropriate clean-up responses. See 42 U.S.C. § 9621(b). For example, CERCLA directs the EPA to select a response "that is protective of human health and the environment, that is cost effective, and that utilizes permanent solutions . . . to the maximum extent practicable." Id. § 9621(b)(1).

We also conclude that the EPA's discretion under CERCLA is grounded in public policy. This conclusion is supported by the express language of the statute, which directs the EPA to take into consideration, among other things, "the public health or welfare or the environment" in deciding the appropriate remedial response. See 42 U.S.C. § 9604(a)(1). The Supreme Court has also said that "[w]hen established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." United States v. Gaubert, 499 U.S. 315, 324 (1991).

In its appellate brief, GIP contends that the EPA acted outside its discretionary authority under CERCLA because it "fabricated an environmental justification, and in fact acted only as a calculated means of converting GIP's valuable property." The focus of our inquiry, however, "is not on the agent's

10

subjective intent in exercising discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." Id.

GIP has alleged no facts disputing either the presence of hazardous substances at the Site or disputing that the kish and slag piles were a potential source of the release or threatened release of hazardous substances. Given the record before us, we cannot conclude that Defendants' removal of the kish and slag from the Site was wholly unrelated to the EPA's remediation work or otherwise outside the EPA's discretionary authority under CERCLA. That Defendants later sold recyclable materials removed from the slag piles does not render Defendants' conduct outside the scope of the discretionary function exception: no statute, regulation, or policy prohibits the EPA or government contractors from selling materials removed during a remediation project. To the contrary, CERCLA directs the EPA to prioritize clean-up methods that are "cost effective." See 4 U.S.C. § 9621(b)(1).

For the reasons set forth in the opinion and in the district court's order, we affirm.[3]

AFFIRMED.

---

[3] We also conclude that the district court abused no discretion in dismissing GIP's FTCA claims without first allowing GIP an opportunity to conduct additional jurisdictional discovery, particularly given that GIP had already had ample opportunity to conduct discovery during the four previously filed lawsuits stemming from the EPA's remediation work at the Site.